* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Hall with minor modifications.
 * * * * * * * * * * * *Page 2 
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
2. At the time of the hearing before the deputy commissioner, plaintiff was a 22 year-old high school graduate. Plaintiff's prior work history includes carpentry work and laying block, brick, and rock. Plaintiff began working as a carpenter for defendant Randy Alexander a few months prior to his June 16, 2005 injury.
3. At the time of plaintiff's injury, plaintiff was employed by defendant Randy Alexander, a subcontractor for defendant Majestic Mountain Construction, Inc., which was owned by Marsha Patterson-Jones, constructing custom villas or townhomes in Glenville, North Carolina. Ms. Patterson-Jones was the general contractor that pulled the permits for the job on which plaintiff was injured.
4. Ben Jones, Ms. Patterson-Jones' husband, was the site manager for the property on which defendant Majestic Mountain was developing and plaintiff was working. Mr. Jones hired the subcontractors, told them what to do, checked to make sure the work was being done properly, and reported back to his wife on what materials needed to be ordered. Mr. Jones is not a licensed contractor. Majestic Mountain Construction, Inc. provided the materials for the job.
5. Ben Jones indicated that all the subcontractors were required to have workers' compensation insurance and that Randy Alexander was going to provide proof of coverage. Mr. Alexander never provided proof of coverage. Mike Jones, a subcontractor that had his own crew *Page 3 
and also did carpentry work on the same jobsite as Mr. Alexander, did have workers' compensation according to Ben Jones, as did some of the other subcontractors.
6. Mr. Alexander gave Mr. Jones invoices with the number of hours for his employees. Mr. Alexander made money on his crew by charging the general contractor more per hour for his crew than the hourly amount he actually paid his crew. Mr. Jones said that he did not recall seeing invoices with hours on them and that he dealt with subcontractors on contract prices based on a certain amount of money per measurements such as per square or linear feet.
7. William Patterson testified that he was the majority owner of the property where the accident subject of this case occurred. Mr. Patterson said that Majestic Mountain Construction, Inc., which was owned by his daughter, did not get paid on a regular basis, but got paid on the sale of the units. Mr. Patterson said that his daughter was part owner of the property, although no documents were produced to support that assertion, and he also testified that his daughter did not appear on the real estate deed. Mr. Patterson testified that he needed a general contractor to pull permits on the construction job and was able to get Majestic Mountain Construction, Inc. to operate in that capacity with an agreement that the general contractor would not get paid until the units sold.
8. On June 16, 2005, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant Randy Alexander. Mr. Alexander did not have workers' compensation insurance and did not provide proof of insurance to the general contractor.
9. On June 16, 2005, Randy Alexander, Darrell Thompson, Tim Tanner, and plaintiff were working on a second-story deck that collapsed and broke away from the town *Page 4 
home, causing plaintiff to fall approximately 15 to 16 feet onto a lower deck, then fall to the ground approximately 10 feet below the lower deck, and then down an embankment.
10. Plaintiff was transported to Harris Regional Hospital in Sylva, North Carolina by ambulance and was noted to have severe pain to the lower back and a strange feeling in his legs. Plaintiff was ultimately diagnosed with a possible burst fracture of the L-2 disc and was transferred to Mission Hospital in Asheville, North Carolina on the same date. Plaintiff was examined and noted to have an L-1 burst fracture with spinal cord injury, myelopathy, and an 80% canal compromise.
11. On June 17, 2005, plaintiff underwent emergency anterior/posterior L-1 corpectomy and fusion from T-12 to L-2 by Dr. Jonathan Sherman of Mountain Neurological Center. Plaintiff developed fever, dysnea, and hypoxemia during his hospital stay, which was suspected to be a pulmonary contusion, but was treated with antibiotics as hospital-acquired pneumonia. There was an additional notation of a grade 1 to grade 2 liver laceration that was stable. Plaintiff was discharged from Mission Hospital on June 25, 2005.
12. Upon discharge from Mission Hospital, plaintiff was admitted to Thoms Inpatient Rehabilitation Hospital where he made good progress in a therapeutic program. Plaintiff was discharged from Thoms on June 30, 2005 with notations that he was independent with eating, grooming, and upper body dressing, was at minimum assistance with bathing and toileting, and was at moderate assistance with lower body dressing. Plaintiff did require minimum assistance with thoracolumbosacral orthosis, though it was felt his mother would be able to assist him. It was also noted that plaintiff was independent with transfers, including toilet transfers and was at a modified independent level with shower transfers using grab bars. Plaintiff was independent without any assistive device to walk up to 2000 feet on level surfaces and 1000 feet on un-level *Page 5 
surfaces. Upon discharge, plaintiff was told to follow up with Dr. Sherman as scheduled and to wear his thoracolumbosacral orthosis when out of bed. Grab bars were also recommended for tub and toilet use for added safety at home, and a hip kit was also ordered due to back precautions and plaintiff's need to wear a back brace.
13. On July 12, 2005, Dr. Jonathan Sherman at Mountain Neurological Center in Asheville, North Carolina saw plaintiff and indicated that plaintiff's strength, reflexes, and sensation were within normal limits in the bilateral lower extremities, but diminished sensation over the abdominal wall in a nondermatomal pattern. X-rays showed good position of the bone graft, screws, and rods. Dr. Sherman expected plaintiff to make slow, steady progress over the next several months and recommended a follow-up in two months.
14. On August 11, 2005, plaintiff saw his family physician, Dr. Mark W. Heffington, for a painful knot in the area of the left lower anterolateral ribcage. Exquisite tenderness was noted over plaintiff's left lowermost rib. Dr. Heffington recommended padding plaintiff's back brace to help relieve pressure that plaintiff felt the brace was causing.
15. At plaintiff's follow-up appointment on September 16, 2005, Dr. Sherman indicated that although plaintiff continued to have some pain in the left hip region, plaintiff's sensation was remarkably improved, and he had regained normal motor function, as well as normal bowel and bladder function. Dr. Sherman recommended a return visit in nine months with a thin-cut CT scan.
16. On November 16, 2005, Dr. Sherman released plaintiff to return to work with restrictions, however, those restrictions were not outlined. On December 5, 2005, Dr. Sherman released plaintiff to return to work without restrictions. On January 12, 2006, plaintiff was again seen by Dr. Sherman on a follow-up visit and was felt to be doing extremely well. It was noted *Page 6 
that a full release to work without restrictions was given, and a follow-up was recommended in six to seven months.
17. On January 20, 2006, plaintiff returned to Dr. Heffington for continued severe pain in the lower back and marked fatigue of his trunk and leg muscles after very limited activity. Plaintiff also reported an inability to bend far at the waist and difficulty lifting and carrying more than five pounds without pain. Dr. Heffington opined that he did not believe plaintiff was able to sustain gainful employment at that time, and that it was his opinion that it would be six months or more before plaintiff would be able to do so.
18. On August 23, 2006, Dr. Heffington, noted plaintiff's inability to stand, sit, push, pull, or lift for any significant period of time secondary to back pain.
19. On August 30, 2006, plaintiff returned to Dr. Sherman, who noted that plaintiff continued to have some numbness in an L-1 dermatomal pattern bilaterally. Dr. Sherman opined that he expected the L-1 numbness bilaterally to persist indefinitely, but felt a full recovery had been obtained neurologically. Plaintiff was to follow-up as needed.
20. In December 2006, plaintiff returned to Dr. Sherman, at which time plaintiff was referred for a Functional Capacity Evaluation (FCE) due to ongoing back pain and continued numbness. The FCE was requested in order to provide guidelines and restrictions for future employment. Plaintiff also returned to Dr. Heffington in December 2006, at which time Dr. Heffington also recommended an FCE.
21. On January 16, 2007, plaintiff underwent an FCE at Haywood Regional Medical Center to determine plaintiff's extent of his functional limitation. The FCE report indicated maximum effort given and that plaintiff was at the light-medium physical demand level. The report noted that plaintiff's previous job as a carpenter is listed as medium, requiring plaintiff to *Page 7 
lift, push, pull, and carry up to 50 pounds, which plaintiff cannot perform at this time due to his deconditioned state. A negative battery of symptom magnification testing was administered, validating the testing results as reliable and that plaintiff provided maximum effort. The report additionally stated that a work-conditioning program had not been provided, which would address current limitations and could increase plaintiff's lifting capacity. It was indicated that plaintiff's maximum safe lifting limits were 0 lbs. floor to thigh, 44 lbs. waist to shoulder, 34 lbs. shoulder to overhead, and 44 lbs. 12 inches to waist with a maximum carry limit of 34 lbs. over a distance of 100 feet.
22. Plaintiff attempted to work other jobs in the same field after he was released to return to full duty work, but was unable to maintain employment due to ongoing back pain and numbness. Plaintiff had not returned to work as of the date of the hearing before the deputy commissioner.
23. Plaintiff incurred $118,722.90 in medical expenses with the following providers:
 • Asheville Pulmonary and Critical Care — $510.00
 • CarePartners BAR — $10,183.52
 • Mountain Area Family Medicine — $404.00
 • Harris Regional Hospital — $890.15
 • Mission/St. Josephs Hospital — $67,192.78
 • Carolina Mountain Emergency — $338.00
 • Asheville Radiology Associates — $2,125.00
 • Mountain Neurology Center — $24,944.00
 • MMH Trauma Surgeons — $7,870.50
 • Asheville Anesthesia Associates — $3,651.00 *Page 8 
 • Carolina West Radiology — $49.00
 • Advanced Home Care — $40.00
 • Mountain Rehab Medical — $42.00
 • Connnexus Pharmacy System/Wal-Mart Pharmacy — $482.95.
24. At the time of plaintiff's accident, plaintiff was earning $12.00 per hour and working 40 hours per week. Plaintiff's average weekly wage was $480.00, yielding a compensation rate of $320.16 per week. An Industrial Commission Form 22 was not provided nor received into evidence.
25. Defendant Majestic Mountain Construction, Inc. was the general contractor on the job where plaintiff was injured. Majestic Mountain Construction, Inc. failed to carry workers' compensation insurance and failed to require its subcontractor, defendant Randy Alexander, to provide proof of workers' compensation insurance.
26. There is no evidence that Majestic Mountain Construction, Inc. had three or more employees so as to make them subject to the Act, however, pursuant to N.C. Gen Stat. § 97-19, they were required to have workers' compensation insurance to cover their subcontractors' employees.
27. Marsha Patterson-Jones was the individual with the responsibility of and authority to bring her company, Majestic Mountain Construction, Inc., into compliance with the North Carolina Workers' Compensation Act.
28. Randy Alexander had three or more employees from at least May 5, 2005 through June 16, 2005, which is 43 days, and did not have workers' compensation insurance as required by the North Carolina Workers' Compensation Act. Randy Alexander was the person with the ability and authority to bring his business into compliance with the Act. *Page 9 
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. All parties are properly before the Industrial Commission, are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the Commission has jurisdiction over the parties and the subject matter of this case. N.C. Gen Stat. § 97-2.
2. On June 16, 2005, an employment relationship existed between plaintiff and defendant Randy Alexander, who was a subcontractor to defendant Majestic Mountain Construction, Inc., the general contractor on the job where plaintiff's injury occurred. Defendant Majestic Mountain Construction, Inc. did not obtain proof of insurance from defendant subcontractor Randy Alexander and, therefore, is plaintiff's statutory employer. N.C. Gen Stat. §§ 97-2, 97-19.
3. On June 16, 2005, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant Randy Alexander. N.C. Gen Stat. § 97-2.
4. Plaintiff had an average weekly wage of $480.00, yielding a compensation rate of $320.16 per week. N.C. Gen. Stat. § 97-2.
5. Plaintiff is entitled to have defendants Randy Alexander and Majestic Mountain Construction, Inc. to pay him temporary total disability benefits from June 16, 2005 through the date of the hearing before the deputy commissioner and continuing until plaintiff returns to suitable employment or until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
6. Plaintiff's medical treatment for his June 16, 2005 compensable injury was reasonably required to affect a cure, give relief or lessen plaintiff's period of disability. Plaintiff is entitled to have defendants Randy Alexander and Majestic Mountain Construction, Inc. pay for all medical treatment and allowable travel expenses causally related to his compensable injury by accident. Plaintiff *Page 10 
is entitled to have defendants Randy Alexander and Majestic Mountain Construction, Inc. pay for all future medical treatment reasonably related to his compensable injury by accident on June 16, 2005 to the extent that it tends to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-25; 97-25.1.
7. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
8. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, willfully fails to bring the employer in compliance, shall be guilty of a Class H felony. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, neglects to bring the employer in compliance, shall be guilty of a Class 1 misdemeanor. Any person who violates this subsection may be assessed a civil penalty by the Commission in an amount up to one hundred percent (100%) of the amount of any compensation, indemnity and/or medical, due the employers' employees injured during the time the employer failed to comply with N.C. Gen. Stat. § 97-93. N.C. Gen. Stat. § 97-94(d).
9. Defendant Randy Alexander had three or more employees from at least May 5, 2005 through June 16, 2005, which is 43 days, and did not have workers' compensation *Page 11 
insurance as required by the Act. Defendant Randy Alexander was the person with the ability and authority to bring his business into compliance with the Act.
10. Defendant Majestic Mountain Construction, Inc. did not have three or more employees so as to make them subject to the Act; however, pursuant to N.C. Gen Stat. § 97-19, it was required to have workers' compensation insurance to cover its subcontractors' employees since it did not require proof of insurance from defendant Randy Alexander for the 43 days that he worked for Majestic Mountain Constructions, Inc. Marsha Patterson-Jones was the person with the ability and authority to bring her company, Majestic Mountain Construction, Inc., into compliance with the Act.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants Randy Alexander and Majestic Mountain Construction, Inc. shall pay plaintiff temporary total disability benefits from June 16, 2005 through the date of the hearing before the deputy commissioner and continuing until further order of the Industrial Commission, subject to an attorney's fee set out below.
2. Defendants Randy Alexander and Majestic Mountain Construction, Inc. shall pay for all past and future medical expenses incurred by plaintiff as a result of his compensable injuries.
3. A reasonable attorney's fee in the amount of 25% of the compensation awarded to plaintiff in paragraph 1 of this Award is hereby approved for plaintiff's counsel and shall be deducted from the compensation due plaintiff and paid directly to plaintiff's attorney. *Page 12 
4. The order of exhaustion of this Award pursuant to N.C. Gen. Stat. § 97-19 shall be defendant Randy Alexander, the employer, followed by defendant Majestic Mountain Construction, Inc., the statutory employer.
5. Defendant's counsel shall send a copy of this decision to all healthcare providers listed in paragraph 16 of the findings of fact. The healthcare providers with outstanding bills in this matter shall not seek to obtain collection of these bills from plaintiff. Collection should be directed at defendant Randy Alexander at 188 Wabash Drive, Sylva, North Carolina 28779 and defendant Majestic Mountain Construction, Inc., Attention: Marsha Patterson-Jones, 92-3 Shoppes on the Green, Cashiers, North Carolina 28717. Failure by the healthcare providers and their collection agencies to comply with this Order will result in the initiation of contempt proceedings against persons in violation of this Order.
6. Penalties pursuant to N.C. Gen. Stat. § 97-94(b) were assessed against both named defendants in the Opinion and Award issued in I.C. No. 559307 that also included PH-1669.
7. Pursuant to N.C. Gen. Stat. § 97-94(d), an additional penalty of 100% of the amount of medical and indemnity compensation due to plaintiff in this matter is assessed against defendant Randy Alexander for failing to comply with N.C. Gen. Stat. § 97-93. A check in the amount of $141,362.79 (TTD to date of hearing before the deputy commissioner — 22,639.89 + Meds-$118,722.90 = $141,362.79) shall be made payable to the North Carolina Industrial Commission and sent directly to Assistant Attorney General Tracy Curtner at the Fraud Unit of the North Carolina Industrial Commission.
8. Pursuant to N.C. Gen. Stat. § 97-94(d), an additional penalty of 100% of the amount of the medical and indemnity compensation due to plaintiff in this matter is assessed against defendant Marsha Patterson-Jones for failing to bring Majestic Mountain in to *Page 12 
compliance with N.C. Gen. Stat. § 97-93. A check in the amount of $141,362.79 (TTD to date of hearing before the deputy commissioner-$22,639.89 + Meds-$118,722.90 = $141,362.79) shall be made payable to the North Carolina Industrial Commission and sent directly to Assistant Attorney General Tracy Curtner at the Fraud Unit of the North Carolina Industrial Commission.
9. Defendants shall pay the costs.
This the 19th day of November, 2007.
S/___________________ BUCK LATTIMORE COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1